WICKER, Judge.
Michael E. DiRosa appeals his conviction for violating Jefferson Parish Ordinance No. 5275 relating to noise. We affirm.
DiRosa and the complaining witnesses, Mr. and Mrs. Peter F. Cullinane, Jr., were next-door neighbors. DiRosa’s dog was in his yard about ten feet away from the Cullinane’s bedroom window. On July 5, 1985, from about 7:00 p.m. to 10:40 p.m., the dog barked continuously and in a frenzied manner. The Cullinanes complained, resulting in this prosecution. DiRosa was charged by bill of information with violating Jefferson Parish Ordinance No. 5275, by allowing a dog to bark and disturbing the peace of Peter Cullinane.
At his arraignment on March 5, 1986, DiRosa insisted on being represented by a non-attorney friend, which the trial judge did not permit. DiRosa also refused to plead and refused to sign a waiver of rights form, not wanting to waive any of his rights. The court entered a plea of not guilty for him and set deadlines for filing motions.
DiRosa filed multiple motions after the deadline had passed: motions for discovery, a motion for continuance, a motion for a public trial in a courtroom large enough to accommodate forty people, a motion for dismissal for a lack of jurisdiction, a motion for administrative hearing, a motion for a twelve-person jury, a motion for rights “sua sponte”, a motion to be represented by non-attorney counsel, a motion to quash the not guilty plea entered on his behalf, a motion for the issuance of subpoena duces tecum, and a motion for a hearing on his motions. The motions for discovery, public trial, hearing and continuance were either granted or marked satisfied. The motions for jury trial, non-attorney counsel, rights “sua sponte” (DiRosa admitted he had read his rights even though he had not signed the form acknowledging his awareness of them), lack of jurisdiction, and administrative hearing were denied. His motion to quash his plea was specifically denied as untimely filed.
DiRosa’s second motion for continuance was denied, and the case was tried on August 12, 1986. He was convicted, fined $20.00, and given a suspended 24-hour sentence and 30-day probation. DiRosa took writs to the Fifth Circuit, which were granted. He then moved for a waiver of the transcript fee, which was denied. The clerk moved to dismiss his appeal for non *1246 payment. The Supreme Court, however, ordered that he be allowed to proceed in forma pauperis and the transcript be furnished without cost.
DiRosa’s multiple assignments of error are quoted below.
(1) The Accused was improperly arraigned. The Accused was not read his rights, nor adequately informed of the charges against him.
(2) The Accused never knowingly or willingly waived his right to a proper arraignment. Accused never plead guilty or not guilty, but stood mute. The Accused objected to the not guilty plea being entered and my objection was never overruled ...
(3) The Accused never knowingly or willingly waived his right to counsel of choice, and was denied counsel, In violation of Amendment VI of the U.S. Constitution arid Supreme Court rulings ...
(4) Accused was confused, because the notice of arraignment specified in writing one offense (barking dog) and the Accused was arraigned under a different offense ...
(5) The Accused’s pleading for counsel of choice was denied. Counsel of choice is guaranteed by the U.S. Constitution and upheld by the Supreme Court of the United States ...
(6) The Accused’s pleading for rights sua-sponte was denied. This person unlearned in the law cannot be held to the strict rules and customs of the court ...
(7) The Accused’s pleading for dismissal for want of jurisdiction was denied. The question of jurisdiction had never been proven by the court. Once jurisdiction has been challenged, it must be asserted and proven, and cannot be summarily ruled upon by a mere act or estoppel.
(8) This case should have been handled by an administrative hearing as stated in the Jefferson Parish Code sec. 7-159, and sec. 7-160.
(9) The Accused was tried under the wrong ordinance. The Jefferson Parish ordinance No. 15740 (J.P. Code 7-156) deals specifically with noises made by animals. This is an ordinance that has been revised from the 1961 code. This clearly shows that the Jefferson Parish council has, for a long time, made a distinction between noises made by animals and noises made by people, to the extent of imposing a different set of penalties for each. The Jefferson Parish Ordinance 5275 (J.P. Code 20-201) that I was tried under deals with noises made by people.
(10) The prosecution never proved that the Accused made any noise at all, much less a loud and/or annoying noise as is required under ordinance 5275 ...
(11) The prosecution never proved that the alleged violation was committed with force and arms as is stated in the information. ... In fact the state failed to proved [sic] that I was even aware of the occurrence of a possible violation of any ordinance ...
(12) The prosecution never proved intent or that the Accused was even aware of the occurrence of the alleged violation.
These multiple assignments can be reduced to only a few: improper arraignment (assignments one, two and six), denial of counsel (assignments three and five), lack of jurisdiction (assignments four, seven, and eight) and insufficiency of evidence (assignments nine, ten, eleven, and twelve).
THE ARRAIGNMENT
DiRosa has two complaints about his arraignment: the courts’ alleged failure to read him his rights and the ordinance under which he was being charged, and the court’s action in entering a plea of not guilty on his behalf.
The record shows that DiRosa admitted that he had read the rights form offered him, although he refused to sign it. The bill of information was read to him, charging him with violation of Ordinance No. 5275, corresponding to the current ordinance No. 20-201. This complies with the requirements of L.S.A.-C.Cr.P. art. 551.
With regard to the entry of a not guilty plea for DiRosa, L.S.A.-C.Cr.P. ark 554 requires that the court enter a plea of not guilty for the defendant “[i]f he stands *1247 mute, refuses to plead, or pleads evasively.”
There is no merit to assignments of error one, two, and six.
RIGHT TO COUNSEL
DiRosa complains that he was denied his choice of “counsel”, a non-attorney friend, arguing that the constitutional mandate doesn’t limit the word “counsel” to “attorney.”
Our legislation limits the practice of law[1] to persons who are licensed and admitted to practice by the Louisiana Supreme Court. L.S.A.-R.S. 37:213. Furthermore, there is no right under the Sixth Amendment of the U.S. Constitution to be represented by a non-attorney. State v. Taylor, 495 So.2d 996 (La.App.3rd Cir.1986), writ den. 499 So.2d 84 (La.1987); United States v. Benson, 592 F.2d 257 (5th Cir.1979).
There is no merit to assignments of error three and five.
JURISDICTION
DiRosa’s jurisdictional objection consists of his claim to be entitled to an administrative hearing under Jefferson Parish Code sections 7-159 & 160. These sections establish a procedure for committee hearings on animal complaints, especially where the complainant is an animal control or pest control officer. The powers of the committee exclude the imposition of criminal or quasi-criminal penalties, i.e. fines and/or imprisonments. These sections do not establish exclusive jurisdiction over animal offenses; on the contrary, because of the limited sanctions, it appears that they are not intended to apply to animal offenses which are prosecuted as misdemeanors, as here.
The First Parish Court has criminal jurisdiction “concurrent with that of the district court, for the trial of all persons charged with offenses or crimes committed within its territorial boundaries, but not including capital crimes or those crimes or offense which are punishable by imprisonment at hard labor....” L.S.A.-R.S. 13:2561.3. We hold that it had jurisdiction to hear the charges against DiRosa.
There is no merit to assignments of error four, seven and eight.
SUFFICIENCY OF EVIDENCE
Jefferson Parish Ordinance No. 5275, corresponding to section 20-102 of the Jefferson Parish Code, makes it
unlawful for any person to make, continue or cause to be made or continued, any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others, within the parish.
It lists, non-exclusively, certain types of noises deemed to be violations: horns, whistles, radios, phonographs, loudspeakers, and hawkers. DiRosa was charged and convicted under this ordinance.
He argues that he should have been charged with Jefferson Parish Ordinance No. 15740, corresponding to section 7-156 of the Code, which deals with “excessive, continuous or untimely barking, howling, yelping, whining, crowing, calling, crying, screeching, caterwauling, bawling, wailing, puling, ululating or other animal noises....”
While DiRosa could have been charged with the animal-specific ordinance, the offense with which he was charged can properly be included in the general noise prohibition. There could not be any real confusion in DiRosa’s mind about the actions which formed the basis of this prosecution.
The evidence at DiRosa’s trial, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact of his guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
Mrs. Cullinane (Mr. Cullinane had died before the case came to trial) testified that DiRosa’s dog barked constantly from 7:00 P.M. until 10:40 P.M. only a few feet away from her house. Her deceased husband, *1248 daughter, and son-in-law were all present on that particular evening. Mr. Cullinane was at the time, and for some time previously, in ill health; and the dog’s barking contributed to his ill health, since he couldn’t get sufficient rest. At times prior to this evening, the dog wouldn’t let her get into her own yard. Mr. Cullinane had made several complaints to DiRosa about the dog over the years, as well as complaints to other neighbors about their barking dogs; but DiRosa did nothing to curb the dog’s barking.
Catherine Saucier, the Cullinanes’ daughter, testified that the barking complained of was loud and continuous until she left about 10:00 P.M. The dog disturbed and annoyed them; and she felt that the barking was related to her father’s death, since he couldn’t rest. She saw no reason for the dog’s barking. The annoyance stemmed from the volume and consistency of the barking. She testified that no one antagonized the dog on the night in question.
Bryan Saucier, the son-in-law, testified that the barking was loud and non-stop from 7:00 P.M. until 10:30 or 11:00 P.M. He could hear the dog barking even when he was in the living room watching television. He saw no reason for the barking and even went outside the house to check. He recalled that DiRosa once told him something about the Cullinanes harassing the dog by being in their backyard barbecuing. No one antagonized the dog on the evening in question. When Mr. Cullinane asked DiRosa to keep the dog quiet, DiRo-sa wasn’t cooperative and asked Cullinane to go back where he belonged.
Philip Trapani, the neighbor on the other side of DiRosa, testified in DiRosa’s behalf that he didn’t hear the dog barking and only hears the dog bark when someone passes on the sidewalk and the dog goes to the fence to bark. He said Mr. Cullinane brought the previous owner of DiRosa’s house to court twice about his dog, and that dog didn’t ever bark. DiRosa’s dog doesn’t bark or aggravate in any way, and he didn’t think the dog was barking on the night in question. His house was on the opposite side from where the dog was kept, about seventy feet away. Trapani testified that he had a hearing problem, and this was obvious from the testimony. He did say, however, that he could hear dog barking even though he couldn’t make out words when he heard people talking. He also evidenced some confusion about the events of the night in question, since he apparently thought the issue was another incident at another time. “At the house I seen a little commotion going on outside. ... I even seen the commotion when the boy hits the lady’s son.... I done see a commotion, the police car and all.”
DiRosa testified that the barking on the night in question was only occasional and not loud. Mr. Cullinane had previously told him he was super-sensitive to dog barks. DiRosa would always bring the dog in if Mr. Cullinane called to complain, and there was no call on the night in question. He said the dog doesn’t bark for no reason, and he always checks out any loud or continuous barking. The dog only barks at other dogs and passersby. No other neighbors ever complained about the dog. The dog always came in at night, generally between 7:00 and 8:00 P.M. He thought perhaps Mr. Cullinane had a vendetta against him. The lady who sold him the house told him that Mr. Cullinane constantly complained about dogs. He also testified that his wife, two sisters-in-law, and mother-in-law were present on the night in question but were not available to testify.
The trial judge noted that all three prosecution witnesses were consistent in their testimony “with the date and with the conduct of the dog.” He believed that Trapani was sincere in his testimony, but he noted the hearing problem and the fact that he was confused about the date.
Based on what I’ve heard today, I believe that the dog was out there barking. It’s aggravating, and the aggravating thing is you can’t — -you’re sitting on the edge waiting for the dog to bark next.... I think you are guilty of allowing the dog to continue to bark. And the allowing, as I appreciate our civil code, when you *1249 own an animal, you’re strictly responsible.
We believe that this prosecution testimony is sufficient to prove a violation of Jefferson Parish’s noise ordinance making it unlawful for “any person to make, continue or cause to be made or continued any loud, unnecessary or unusual noise.” The list of examples in the ordinance is only suggestive and not exclusive and certainly could encompass the noise complained of.
There is no merit to assignments of error nine, ten, eleven and twelve.
AFFIRMED.

. The practice of law includes "... appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state...." L.S.A.-R.S. 37:212 A.